UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SALDANA,<br><br>        Plaintiff,<br>v.<br>BRIAN ROBERTS, ET AL.,<br><br>        Defendants. | No. 2:24-cv-00895-DSF-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENST FROM DEFENSTANTS L.A. COUNTY AND SOWDERS (DKT. 88)** |

## I.

## INTRODUCTION

This is a civil rights lawsuit seeking damages for the wrongful incarceration of Plaintiff Daniel Saldana ("Plaintiff"), who was exonerated after serving 33 years in prison for a cime that he did not commit.[1] (Dkt. 1 at 2.) Defendants Brian Roberts, Keith Stanton, L.A. County, and Steven Sowders (collectively,

---

[1] Plaintiff's Complaint asserts a variety of civil rights claims under 42 U.S.C. § 1983, as well as related state law claims such as intentional infliction of emotional distress, intentional interference with the right to obtain judicial review of legality of confinement in violation of California Government Code § 845.4, negligence in violation of California Civil Code § 1714, and *respondeat superior* or vicarious liability under California Government Code § 815.2. (Dkt. 1 at 28-40.)

"Defendants") have all filed answers to the Complaint. (Dkts. 66 & 67.) Defendant Sowders was an assistant district attorney for L.A. County at all times relevant to this case. (Dkt. 1 at 7.) The claims against Sowders are not based on any role he had in Plaintiff's prosecution, but instead, Sowders is alleged to have been present at a parole hearing in 2017 where Plaintiff's co-defendant Raul Vidal confessed to the crime and testified that Plaintiff was innocent. (Id. at 23-24.) The claims against Sowders, and vicariously against L.A. County, are based on the allegation that Sowders did not take action to free Plaintiff after learning of his innocence. (Id. at 25-26.) Defendants Roberts and Stanton were commissioners for the Board of Parole Hearings ("BPH") at all times relevant to this case. (Id. at 6.) Both Roberts and Stanton are similarly alleged to have been at the 2017 parole hearing where Vidal confessed and testified that Plaintiff was innocent. (Id. at 23-24.) The claims against Roberts and Stanton are similarly based on the allegation that they did not take action to free Plaintiff after learning of his innocence. (Id. at 25-26.)

This case is now in the discovery phase with a Fact Discovery Cut-Off of May 5, 2025. (Dkt. 62 at 1.) Presently before the Court is a dispute related to the production of 16 specific emails by defendants L.A. County and Sowders. (Dkt. 86.) Specifically, Plaintiff challenges the assertion of deliberative-process privilege by defendants L.A. County and Sowders as to the emails. (Dkt. 88.) For the reasons set forth below, the Court concludes that defendants L.A. County and Sowders have failed to meet their burden to demonstrate that the deliberative-process privilege applies to the 16 emails. Accordingly, the Court OVERRULES the objections based on the deliberative-process privilege and orders defendants L.A. County and Sowders to produce the 16 emails within 7 days, subject to certain redactions discussed below.

\\

\\

## II.

## PROCEDURAL HISTORY

The parties reached out to the Court requesting an informal discovery conference on February 6, 2025. On February 11, 2025, the Court held an informal discovery conference to discuss the discovery dispute with the parties. (Dkt. 85.) Based on the discussion, the parties agreed to resolve their dispute through the submission of short letter briefs and *in camera* review of the documents being withheld as privileged. (Id. at 1.) The parties agreed that defendants L.A. County and Sowders would file their letter brief and provide all documents being withheld as privileged to the Court for *in camera* review by February 21, 2025. (Id.) The parties further agreed that Plaintiff would have until February 26, 2025 to file a responsive letter brief. (Id.)

Pursuant to the agreement of the parties, defendants L.A. County and Sowders filed their letter brief on February 21, 2025 (the "L.A. County Brief") and submitted 16 emails to the Court for *in camera* review. (Dkt. 86.) On February 26, 2025, Plaintiff filed letter brief seeking to compel the production of documents by L.A. County and Sowders ("Plaintiff's Brief"). (Dkt. 88.) On February 28, 2025, the Court held a hearing to consider oral argument.

## III.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal cases and provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevance under Rule 26(b)(1) is defined broadly. See, e.g., Snipes v. United States, 334 F.R.D. 548, 550 (N.D. Cal.

2020); V5 Techs. v. Switch, Ltd., 334 F.R.D. 306, 309 (D. Nev. 2019) (noting that relevance for discovery purposes remains broad even after the 2015 amendments to the Federal Rules of Civil Procedure), aff'd sub nom., V5 Techs., LLC v. Switch, LTD., 2020 WL 1042515 (D. Nev. Mar. 3, 2020).  In addition to relevance, Rule 26(b)(1) requires that discovery be proportional to the needs of the case.  Proportionality is determined by a consideration of the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

As set forth above, Rule 26(b)(1) expressly recognizes that privileged matters fall outside the scope of discovery.  However, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged[,] . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  "In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold."  In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992).  The Ninth Circuit has "previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach."  Id.  "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question."  Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988).  Boilerplate objections or blanket refusals inserted into a discovery response are insufficient to meet this burden.  See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist.

4

Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005).  Indeed, failure to provide sufficient information to support the privilege may constitute waiver of the privilege.  See, e.g., Eureka Fin. Corp. v. Hartford Accident & Indem. Co., 136 F.R.D. 179, 182-83 (E.D. Cal. 1991).

      Federal Rule of Civil Procedure 34(a) provides that a party may serve on another a request for production of documents, electronically stored information, or tangible things within the scope of Rule 26(b).  Where a party fails to produce documents requested under Rule 34, the requesting party may move to compel discovery.  Fed. R. Civ. P. 37(a).  "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance."  Nguyen v. Lotus by Johnny Dung Inc., 2019 WL 3064479, at *2 (C.D. Cal. June 5, 2019) (internal quotation marks omitted).  "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."  Garces v. Pickett, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021).  "The opposing party is required to carry a heavy burden of showing why discovery was denied."  Id. (internal quotation marks omitted).  Specifically, the party opposing discovery must show that the requested discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the proposed discovery is outside the scope permitted by Rule 26(b)(1).  See Fed. R. Civ. P. 26(b)(2)(C).  The opposing party must specifically detail the reason why the request is improper.  See Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (internal quotation marks omitted)).

## IV.

## DISCUSSION

Defendants L.A. County and Sowders are withholding a total of 16 emails on the basis of the deliberative-process privilege. (Dkt. 86.) The emails all relate to the early stages of an internal investigation by the L.A. District Attorney's Office. (Id. at 2.) According to L.A. County and Sowders, "[e]ach of the communications were generated at the outset of the investigation before the rendering of any decision or determination." (Id.) L.A. County and Sowders contend that the emails "melded the analysis and application of legal and policy issues within the [L.A. District Attorney's Office]." (Id.) L.A. County and Sowders further contend that "the communications contain personal impressions and beliefs as to the purpose, scope, and subject matter of the investigation; individual interpretations of protocol and policies; preliminary conclusions about potential investigation outcomes; and impressions and evaluations of the investigative evidence." (Id. (internal quotation marks omitted).) Plaintiffs seek production of these emails because they are "highly relevant" to the alleged misconduct at issue and suspect that "the documents may be damaging to Defendants' case." (Dkt. 88.)

For the reasons set forth below, the Court concludes that Plaintiff has met his initial burden of demonstrating relevance and proportionality. However, defendants L.A. County and Sowders have not met their burden of demonstrating that the deliberative-process privilege applies. Accordingly, the Court OVERRULES the objections based on the deliberative-process privilege and orders defendants L.A. County and Sowders to produce the 16 emails within 7 days, subject to certain redactions discussed below.

**A.      Plaintiff Has Met His Initial Burden Of Demonstrating Relevance And Proportionality.**

As set forth above, defendants L.A. County and Sowders acknowledge that the 16 emails relate to the early stages of an internal investigation by the L.A.

6

District Attorney's Office into the alleged misconduct at issue in this case. (Dkt. 86 at 2.) Thus, the Court easily concludes that the 16 emails are highly relevant to the case. The Court also easily concludes that production of the 16 emails is proportional to the needs of the case, given that the emails have been identified and can simply be produced without any or very little burden. See Fed. R. Civ. P. 26(b)(1). The Court notes that defendants L.A. County and Sowders do not contest either relevance or proportionality as to the 16 emails. (Dkt. 86 at 1-3.) Therefore, the Court must next determine whether defendants L.A. County and Sowders have met the "heavy burden" of showing why the discovery sought should be denied. See Garces, 2021 WL 978540, at *2 (internal quotation marks omitted).

**B.** **L.A. County And Sowders Have Not Met Their Burden Of Demonstrating That The Deliberative-Process Privilege Applies.**

As set forth above, L.A. County and Sowders object to producing the 16 emails on the basis of the deliberative-process privilege. (Dkt. 86 at 1.) In support of their assertion of privilege, they have provided the declaration of Julie Dixon Silva, Director of the Employee Relations and Bureau of Administrative Services Division in the L.A. District Attorney's Office. (Dkt. 86-1.) Silva declares that she has reviewed the 16 emails and determined on behalf of the L.A. District Attorney's Office to assert the claim of deliberative-process privilege with respect to these communications. (Id. at 3.) According to Silva, [t]he subject communications contain personal impressions and beliefs as to the purpose, scope, and subject matter of the investigation; individual interpretations of protocol and policies; preliminary conclusions about potential investigation outcomes; and impressions and evaluations of investigative evidence." (Id.) Silva states that the deliberative process-privilege is claimed here "to protect [the L.A. District Attorney's Office's] deliberative process and the impressions, evaluations, opinions, recommendations, work product, or theories of [the L.A. District Attorney's Office] personnel which comprise part of a process by which [L.A. District Attorney's Office] decisions are formulated." (Id.

7

at 4.) Silva states that disclosure of the emails "would inaccurately reflect or prematurely disclose the views of [the L.A. District Attorney's Office], suggesting an official position where the communications, at the time of their writing, were indicative of only a personal position." (Id.)

The deliberative-process privilege is a qualified privilege that is intended to protect the quality of agency decisions by promoting frank and independent discussion among those responsible for governmental decision-making. See, e.g., F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984); Carter v. U.S. Dep't of Com., 307 F.3d 1084, 1089 (9th Cir. 2002) ("The purpose of this privilege is to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." (internal quotation marks omitted)).[2] If a document is both "predecisional" and "deliberative" in nature, the privilege applies. F.T.C., 742 F.2d at 1161. Purely factual matter is not deliberative, but the privilege applies if the factual matter cannot be segregated from the deliberative material within the document. Id.

As a qualified privilege, a litigant may still obtain discovery of materials protected by the privilege if the need for the materials outweighs the governmental interest in keeping the decision-making process confidential. See Karnoski v. Trump, 926 F.3d 1180, 1206 (9th Cir. 2019) (*per curiam*). In deciding whether to override the privilege and allow discovery, there are four factors to be considered: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and

---

[2] L.A. County and Sowders rely on both federal and state cases discussing the deliberative-process privilege. (Dkt. 86 at 1-2.) However, the Ninth Circuit has held that "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." Agster v. Maricopa Cnty., 422 F.3d 836, 839 (9th Cir. 2005). Thus, the Court relies on federal privilege law for its analysis.

8

decisions." Id. (internal quotation marks omitted).

Here, the Court concludes that the deliberative-process privilege does not apply to the 16 emails because the emails relate to an internal affairs investigation, not the formulation of an agency policy. Indeed, "courts in the Ninth Circuit have rejected a defendant's use of the deliberative process privilege in relation to internal affairs investigations, as these communications are not designed to contribute to the formulation of important public policy and are routinely generated." Swartwood v. Cnty. of San Diego, 2013 WL 6670545, at *3 (S.D. Cal. Dec. 18, 2013); accord Mayfield v. Cnty. of Los Angeles, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020); Starr v. Cnty. of Los Angeles, 2013 WL 12233527, at *1 (C.D. Cal. May 9, 2013); Dominguez v. City of Los Angeles, 2017 WL 10605960, at *6 (C.D. Cal. Nov. 18, 2017); Howard v. Cnty. of San Diego, 2011 WL 2182441, at *4 (S.D. Cal. June 3, 2011). While these cases involved mostly suits against police departments, their rationale for denying the privilege applies here all the same. That is because the privilege's "ultimate purpose" is "to protect the quality of agency decisions" by promoting "frank and independent discussion among those responsible for making governmental decisions," and by protecting "against premature disclosure of proposed agency policies or decisions." F.T.C., 742 F.2d at 1161.

An internal investigation of the alleged misconduct by Sowders does not directly contribute to the formulation of important public policy by the L.A. District Attorney's Office. See Soto v. City of Concord, 162 F.R.D. 603, 612-13 (N.D. Cal. 1995) ("The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."); see also Thomas v. Cate, 715 F. Supp. 2d 1012, 1044 (E.D. Cal. 2010) ("[T]he deliberative process privilege should be narrowly construed because confidentiality may impede full and fair discovery of the truth."). Indeed, the Ninth Circuit has explained that to assert a claim of deliberative-process privilege, "the agency must identify a specific decision to which the document is predecisional."

9

Maricopa Audubon Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1094 (9th Cir. 1997). Here, however, Silva's declaration fails to identify any decision by the L.A. District Attorney's Office to which the 16 emails are predecisional. (Dkt. 86-1.) The most Silva says is that the emails reflect "the impressions, evaluations, opinions, recommendations, work product, or theories of [L.A. District Attorney's Office] personnel which comprise part of a process by which [the L.A. District Attorney's Office's] decisions are formulated." (Id. at 4.)

The Court has reviewed the 16 emails *in camera* and the emails themselves make clear that they are part of an internal investigation by the L.A. District Attorney's Office into the alleged misconduct at issue in this case. While it is true that the emails include individual interpretations of protocol and policies, there is simply no discussion of any policy decision to be made by the L.A. District Attorney's Office as a result of the investigation. Instead, the investigation appears to be focused on evaluating the merits of this lawsuit.[3] The emails do not reach any conclusion about the merits of the lawsuit and are purely preliminary in nature. One of the emails contains a review of the 2017 parole hearing transcript in which Vidal confessed and exonerated Plaintiff. The email simply summarizes the key facts from the transcript and highlights statements favorable to Sowders. Thus, the Court concludes that L.A. County and Sowders have failed to meet their burden to show that the deliberative-process privilege applies to the 16 emails.

Moreover, even if the deliberative-process privilege applied, which it does not, the Court would find that Plaintiff's "need for the materials and the need for accurate fact-finding override[s] the government's interest in non-disclosure."

---

[3] L.A. County and Sowders are not asserting attorney-client privilege or the attorney work-product doctrine. (Dkt. 86.) According to Plaintiff, defendants L.A. County and Sowders had initially asserted attorney-client privilege, but later withdrew that assertion and switched to only the deliberative-process privilege. (Dkt. 88 at 1.)

F.T.C., 742 F.2d at 1161.  As set forth above, to decide whether to override the deliberative-process privilege, courts consider: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  Karnoski, 926 F.3d at 1206 (internal quotation marks omitted).  Here, the first factor is easily met since the emails relate to an investigation of the alleged misconduct at issue in this case.  The second and third factors also support disclosure because the "evidence sought is primarily, if not exclusively, under [the government's] control, and the government . . . is a party to and the focus of the litigation."  Id.  Finally, the fourth factor also supports disclosure because L.A. County has failed to identify any specific policy decision made as a result of the internal investigation and there is a protective order in place in this case.  See Mayfield, 2020 WL 2510649, at *2 ("And the fourth factor also tips in favor of disclosure because the County has not convincingly explained how disclosure of the investigative files in this specific case would hinder candid discussion of contemplated public policies, especially given that there is a protective order in place.").

In short, the Court concludes that L.A. County and Sowders have not met the "heavy burden" of showing why the 16 emails should be withheld as privileged.  Garces, 2021 WL 978540, at *2 (internal quotation marks omitted).  **Accordingly, L.A. County and Sowders are directed to produce the 16 emails within 7 days.**  The Court notes that several of the emails appear to reference an internal investigation related to a different case that appears unrelated.  Assuming this other investigation is unrelated, then the Court believes that redactions of the references to this other investigation are appropriate prior to production of the emails.

\\
\\

## V.

## CONCLUSION

Consistent with the foregoing, Plaintiff's motion to compel is GRANTED. (Dkt. 88.) Specifically, the Court OVERRULES the objections based on deliberative-process privilege asserted by defendants L.A. County and Sowders as to the 16 emails at issue. (Dkt. 86.) Defendants L.A. County and Sowders may redact the references in these emails to an unrelated investigation and then must produce the emails within 7 days.

Finally, the Court notes that neither side sought an award of expenses with regard to this discovery dispute. (Dkts. 86, 88.) Under Federal Rule of Civil Procedure 37(a)(5)(A), where a motion to compel is granted, the court must award the moving party's reasonable expenses incurred in making the motion unless the court finds that the movant filed the motion before attempting in good faith to obtain the disclosure without court action, the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. The Court concludes that the circumstances of this dispute make an award of expenses unjust. The Court's conclusion is based on the fact that the parties have worked together amicably to narrow the scope of the dispute and present the dispute for resolution in an efficient manner through short letter briefs. This has already saved the parties and the Court time and expense and the Court commends the parties for their professionalism. Awarding expenses to the prevailing party under these circumstances would therefore be unjust. See Fed. R. Civ. P. 37(a)(5)(A).

IT IS SO ORDERED.

DATED: February 28, 2025     _____
                              HON. A. JOEL RICHLIN
                              UNITED STATES MAGISTRATE JUDGE