**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL SALDANA,<br><br>          Plaintiff,<br><br>v.<br><br>BRIAN ROBERTS, ET AL.,<br><br>          Defendants. | No. 2:24-cv-00895-DSF-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DOCUMENTS FROM DEFENDANTS ROBERTS AND STANTON (DKT. 89)** |

**I.**

**INTRODUCTION**

    This is a civil rights lawsuit seeking damages for the wrongful incarceration of Plaintiff Daniel Saldana ("Plaintiff") who was exonerated after serving 33 years in prison for a cime that he did not commit.[1]  (Dkt. 1 at 2.)  Defendants Brian Roberts, Keith Stanton, L.A. County, and Steven Sowders (collectively,

---

[1] Plaintiff's Complaint asserts a variety of civil rights claims under 42 U.S.C. § 1983, as well as related state law claims such as intentional infliction of emotional distress, intentional interference with the right to obtain judicial review of legality of confinement in violation of California Government Code § 845.4, negligence in violation of California Civil Code § 1714, and *respondeat superior* or vicarious liability under California Government Code § 815.2.  (Dkt. 1 at 28-40.)

"Defendants") have all filed answers to the Complaint.  (Dkts. 66 & 67.)  Defendant Sowders was an assistant district attorney for L.A. County at all times relevant to this case.  (Dkt. 1 at 7.)  The claims against Sowders are not based on any role he had in Plaintiff's prosecution, but instead, Sowders is alleged to have been present at a parole hearing in 2017 where Plaintiff's co-defendant Raul Vidal confessed to the crime and testified that Plaintiff was innocent.  (Id. at 23-24.)  The claims against Sowders, and vicariously against L.A. County, are based on the allegation that Sowders did not take action to free Plaintiff after learning of his innocence.  (Id. at 25-26.)  Defendants Roberts and Stanton were commissioners for the Board of Parole Hearings ("BPH") at all times relevant to this case.  (Id. at 6.)  Both Roberts and Stanton are similarly alleged to have been at the 2017 parole hearing where Vidal confessed and testified that Plaintiff was innocent.  (Id. at 23-24.)  The claims against Roberts and Stanton are similarly based on the allegation that they did not take action to free Plaintiff after learning of his innocence.  (Id. at 25-26.)

This case is now in the discovery phase with a Fact Discovery Cut-Off of May 5, 2025.  (Dkt. 62 at 1.)  Presently before the Court is a dispute related to the production of 5 categories of emails by defendants Roberts and Stanton.  (Dkt. 89.)  Specifically, Plaintiff challenges the assertion of the deliberative-process privilege, official-information privilege, and attorney-client privilege by defendants Roberts and Stanton as to the 5 categories of emails.  (Dkt. 87.)  For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to compel production of the 5 categories of emails.

## II.

## PROCEDURAL HISTORY

The parties reached out to the Court requesting an informal discovery conference on February 6, 2025.  On February 11, 2025, the Court held an informal discovery conference to discuss this dispute with the parties.  (Dkt. 85.)  Based on

the discussion, the parties agreed to resolve their dispute through the submission of short letter briefs and *in camera* review of the documents being withheld as privileged.  (<u>Id.</u> at 1.)  The parties agreed that defendants Roberts and Stanton would file their letter brief and provide a sample of documents being withheld as privileged to the Court for *in camera* review by February 21, 2025.  (<u>Id.</u>)  The Court encouraged Roberts and Stanton to identify a few exemplar documents for each type of privilege being asserted (*e.g.*, deliberative process, official information, attorney-client privilege).  (<u>Id.</u>)  Roberts and Stanton agreed to meet and confer with Plaintiff on how to structure the sampling.  (<u>Id.</u>)  The parties further agreed that Plaintiff would have until February 26, 2025 to file a responsive letter brief.  (<u>Id.</u> at 2.)

Pursuant to the agreement of the parties, defendants Roberts and Stanton filed their letter brief on February 21, 2025 (the "BPH Brief") and submitted to the Court 5 exemplar email chains for *in camera* review.  (Dkt. 87.)  On February 26, 2025, Plaintiff filed his letter brief seeking to compel the production of documents by defendants Roberts and Stanton ("Plaintiff's Brief").  (Dkt. 89.)  On February 28, 2025, the Court held a hearing to consider oral argument.

### III.
### LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal cases and provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Relevance under Rule 26(b)(1) is defined broadly.  <u>See, e.g.</u>, <u>Snipes v. United States</u>, 334 F.R.D. 548, 550 (N.D. Cal. 2020); <u>V5 Techs. v. Switch, Ltd.</u>, 334 F.R.D. 306, 309 (D. Nev. 2019) (noting that relevance for discovery purposes remains broad even after the 2015 amendments to

3

the Federal Rules of Civil Procedure), aff'd sub nom., V5 Techs., LLC v. Switch, LTD., 2020 WL 1042515 (D. Nev. Mar. 3, 2020).  In addition to relevance, Rule 26(b)(1) requires that discovery be proportional to the needs of the case.  Proportionality is determined by a consideration of the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

As set forth above, Rule 26(b)(1) expressly recognizes that privileged matters fall outside the scope of discovery.  However, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged[,] . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  "In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold."  In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992).  The Ninth Circuit has "previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach."  Id.  "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question."  Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988).  Boilerplate objections or blanket refusals inserted into a discovery response are insufficient to meet this burden.  See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005).  Indeed, failure to provide sufficient information to support the privilege may constitute waiver of the

4

privilege.  <u>See, e.g.</u>, <u>Eureka Fin. Corp. v. Hartford Accident & Indem. Co.</u>, 136 F.R.D. 179, 182-83 (E.D. Cal. 1991).

Federal Rule of Civil Procedure 34(a) provides that a party may serve on another a request for production of documents, electronically stored information, or tangible things within the scope of Rule 26(b).  Where a party fails to produce documents requested under Rule 34, the requesting party may move to compel discovery.  Fed. R. Civ. P. 37(a).  "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance."  <u>Nguyen v. Lotus by Johnny Dung Inc.</u>, 2019 WL 3064479, at *2 (C.D. Cal. June 5, 2019) (internal quotation marks omitted).  "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."  <u>Garces v. Pickett</u>, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021).  "The opposing party is required to carry a heavy burden of showing why discovery was denied."  <u>Id.</u> (internal quotation marks omitted).  Specifically, the party opposing discovery must show that the requested discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the proposed discovery is outside the scope permitted by Rule 26(b)(1).  <u>See</u> Fed. R. Civ. P. 26(b)(2)(C).  The opposing party must specifically detail the reason why the request is improper.  <u>See</u> <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (internal quotation marks omitted)).

\\

\\

5

# IV.

# DISCUSSION

Defendants Roberts and Stanton are withholding 5 categories of emails on the basis of the deliberative-process privilege, official-information privilege, and attorney-client privilege.  (Dkt. 87 at 2.)  The 5 categories are:  (1) e-mails between defendants Roberts and Stanton on September 1, 2017; (2) e-mails with the subject line "Urgent" sent in June and July 2022 among non-parties Associate Chief Deputy Commissioner Gunning, Deputy Commissioners Andres and Ruff, Chief Counsel Blonien, and Senior Staff Attorney Young; (3) e-mails sent in June and July 2022 between non-parties Andres and Gunning; (4) e-mails sent in October and December 2022 from nonparty Andres to himself; and (5) e-mails sent in February 2023 among non-party BPH staff members, Chief Counsel Blonien, Assistant Chief Counsel McCray, and Assistant Chief Counsel Shultz.  (Id.)

The emails in category 1 "expressly relate to [defendants Roberts and Stanton's] consideration of facts in preparing their decision on whether or not to grant a non-party parole."  (Id. at 3.)  The emails in categories 2 and 3 were similarly sent among the hearing officers and BPH legal counsel in 2022 "for the express purpose of assisting BPH and its hearing officers discuss policy and legal determinations for a parole consideration hearing."  (Id.)  The emails in category 4 are drafts of a letter from nonparty Andres to Associate Chief Deputy Commissioner Gunning.[2]  The emails in category 5 among BPH staff and legal counsel in February 2023 "reflect discussions regarding potential litigation arising from a parole suitability hearing."  (Id. at 6.)  Plaintiffs seek production of the emails in all 5 categories in time for the upcoming depositions scheduled for mid-March and early

---

[2] Defendants Roberts and Stanton do not appear to directly address the emails in category 4 in their letter brief.  (Dkt. 87.)

April.[3]  (Dkt. 89 at 1-2.)

For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to compel production of the 5 categories of emails. With regard to category 1, the Court concludes that the exemplar email chain is protected by the deliberative-process privilege and Plaintiff's interest in obtaining the emails does not justify overriding the privilege.  With regard to category 2, the Court also concludes that the exemplar email chain is protected by the deliberative-process privilege and that Plaintiff's interest in obtaining the emails does not justify overriding the privilege as to those emails that involve legal advice.  The Court also finds in the alternative that almost all of the communications in the exemplar email chain for category 2 are protected by the attorney-client privilege.  However, the Court concludes that there is one email chain (AGO 006410) that is not protected by the attorney-client privilege and therefore Plaintiff's interest in obtaining this one email chain outweighs the government's interest in non-disclosure.  With regard to both categories 1 and 2, the Court concludes that defendants Roberts and Stanton have failed to meet their burden to justify application of the official-information privilege and the Court therefore overrules the objection based on the official-information privilege.

With regard to category 3, the Court concludes that the first two pages of the exemplar email chain are protected by the deliberative-process privilege, but that Plaintiff's interest in obtaining the email chain overrides the government's interest in non-disclosure.  Thus, the Court concludes that the first two pages of the

---

[3] Plaintiff notes that the parties continue to dispute the basis for withholding documents that fall into other categories aside form the 5 enumerated by defendants Roberts and Stanton.  (Dkt. 89 at 2 n.1.)  However, the parties conferred and agreed on these 5 categories for the purpose of the Court's *in camera* review, as they provided a sampling of each type of privilege asserted.  (Id.)  The Court has received from defendants Roberts and Stanton 1 exemplar email chain for each of the 5 categories for *in camera* review.

exemplar email chain should be produced, subject to redaction for attorney-client privilege. With regard to the last four pages of the exemplar email chain, the Court concludes that the deliberative-process privilege does not apply. Thus, the Court concludes that the last four pages of the exemplar email chain should be produced, subject to redaction for attorney-client privilege. With regard to the entire exemplar email chain for category 3, the Court concludes that defendants Roberts and Stanton have failed to meet their burden to justify application of the official-information privilege and the Court therefore overrules the objection based on the official-information privilege.

With regard to category 4, the Court concludes that the exemplar emails are not protected by the deliberative-process privilege or the official-information privilege. Thus, the Court concludes that the exemplar emails should be produced, subject to redaction for attorney-client privilege. Finally, with regard to category 5, the Court similarly concludes that the exemplar emails are not protected by the deliberative-process privilege or the official-information privilege. However, the Court concludes that the entirety of the exemplar emails provided for category 5 are protected by the attorney-client privilege and therefore do not need to be produced.

**A.** **Plaintiff Has Met His Initial Burden Of Demonstrating Relevance And Proportionality.**

As set forth above, defendants Roberts and Stanton acknowledge that the 5 categories of emails relate to either the 2017 parole hearing where Vidal confessed and exonerated Plaintiff, or the fall-out of this hearing and actions taken as a result of Vidals' exculpatory testimony. (Dkt. 87 at 2-6.) Thus, the Court easily concludes that the 5 categories of emails are relevant to the case. The Court also easily concludes that production of the 5 categories of emails is proportional to the needs of the case, given that the emails have been identified and can simply be produced without any or very little burden. See Fed. R. Civ. P. 26(b)(1). The Court notes that defendants Roberts and Stanton do not contest either relevance or

proportionality as to the 5 categories of emails.  (Dkt. 87 at 2-7.)  Therefore, the Court must next determine whether defendants Roberts and Stanton have met the "heavy burden" of showing why the discovery sought should be denied.  See Garces, 2021 WL 978540, at *2 (internal quotation marks omitted).

**B.**   **Roberts And Stanton Have Not Met Their Burden Of Demonstrating That All Of The Emails Are Privileged.**

As set forth above, Roberts and Stanton object to producing the 5 categories of emails on the basis of the deliberative-process privilege, official-information privilege, and attorney-client privilege.  (Dkt. 87 at 2.)  In support of their assertion of the deliberative-process privilege, defendants Roberts and Stanton have provided the declaration of Rhonda Skipper, Chief Deputy of Field Operations at the California Board of Parole Hearings.  (Dkt. 87-1.)  Skipper declares that she has reviewed the exemplar emails provided to the Court for *in camera* review and states that they contain "pre-decisional and deliberative materials related to the [BPH's] internal discussions regarding the decisions and factors to evaluate parole suitability for Plaintiff Daniel Saldana."  (Dkt. 87-1 at 2.)  According to Skipper, "[t]he documents and communications where the deliberative process privilege is asserted were created prior to BPH reaching a final proposed decision to deny or grant non-party Raul Vidal's and Plaintiff Daniel Saldana's parole."  (Id.)  Skipper states that the emails "include questions, recommendations, opinions, and analyses prepared to assist hearing officers in reaching an informed and deliberate decision."  (Id. at 3.)  Skipper further states that the emails "contain internal assessments, proposed courses of action, and considerations that were debated before reaching a proposed decision at the hearings."  (Id.)  Finally, Skipper states that "[d]isclosure of these materials would chill candid discussions among agency personnel and harm BPH's ability to engage in open and frank policy deliberations."  (Id.)

In support of their assertion of the official-information privilege, defendants Roberts and Stanton have provided the declaration of Tara Doetsch, Chief Deputy of

9

Program Operations for the Board of Parole Hearings.  (Dkt. 87-2.)  Doetsch similarly declares that she has reviewed the exemplar emails provided to the Court for *in camera* review and states that "they include information and documents related to an incarcerated person other than Plaintiff and may contain information related to staff and other incarcerated person[s]."  (Dkt. 87-2 at 2-3.)  According to Doetsch, BPH and California Department of Corrections and Rehabilitation ("CDCR") "consider staff personnel records and related documents, as well as records documents investigations into allegations of staff misconduct, to be confidential and maintain them as such."  (Id. at 3.)  Doetsch states that "[i]n addition to privacy interests, relates of the requested information could lead to safety and security concerns for staff, incarcerated people, and institutional operations."  (Id. at 3-4.)  Doetsch further states that "the dissemination of medical and personal information in administrative grievances could subject incarcerated people and staff to threats, coercion, or potential violence given the sensitive details contained in those documents."  (Id. at 4.)  Finally, Doetsch states that "[r]evealing correspondence between commissioners and BPH legal counsel or legal staff would significantly hinder open and candid discussions among parole board hearing officers and agency legal staff if legal staff was unable to offer legal advice and analyses, and if participants feared public disclosure of their communications."  (Id. at 5.)

       1.        **The Deliberative-Process Privilege.**

The deliberative process-privilege is a qualified privilege that is intended to protect the quality of agency decisions by promoting frank and independent discussion among those responsible for governmental decision-making.  See, e.g., F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984); Carter v. U.S. Dep't of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002) ("The purpose of this privilege is to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." (internal quotation

10

marks omitted)).  If a document is both "predecisional" and "deliberative" in nature, the privilege applies.  <u>F.T.C.</u>, 742 F.2d at 1161.  Purely factual matter is not deliberative, but the privilege applies if the factual matter cannot be segregated from the deliberative material within the document.  <u>Id.</u>

As a qualified privilege, a litigant may still obtain discovery of materials protected by the privilege if the need for the materials outweighs the governmental interest in keeping the decision-making process confidential.  <u>See</u> <u>Karnoski v. Trump</u>, 926 F.3d 1180, 1206 (9th Cir. 2019) (*per curiam*).  In deciding whether to override the privilege and allow discovery, there are four factors to be considered: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  <u>Id.</u> (internal quotation marks omitted).

### 2.    The Official-Information Privilege.

Federal common law recognizes a qualified privilege for official information. <u>See</u> <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir.1990).  "Because this privilege is based upon the state's interest in protecting against public disclosure of sensitive information, courts examining a claim of privilege will balance the plaintiff's interest in disclosure against the government's interest in keeping the information secret."  <u>Price v. County of San Diego</u>, 165 F.R.D. 614, 620-21 (S.D. Cal. 1996).  When the official information privilege is asserted in response to a discovery request, court have held that the responsible official within the agency who has personal knowledge regarding the material must submit a declaration that: (1) affirms that the agency has collected the material and held it in confidence; (2) affirms that he or she has reviewed the material; (3) specifically asserts the governmental or privacy interest which would be threatened by disclosure of the material; (4) specifically explains the substantial risk of harm to those interests which would result from disclosure; and (5) estimates the amount of harm which

would result from disclosure.  Id. at 621.  Accordingly, a party may not make a blanket objection on the basis of the official-information privilege, but must make a "specific claim of the rationale of the claimed privilege."  Id.

Courts have recognized ten factors to use in determining whether the official-information privilege applies:  (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.  See Kelly v. City of San Jose, 114 F.R.D. 653, 663 (N.D. Cal. 1987); see also Miller v. Pancucci, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

### 3.    The Attorney-Client Privilege.

The fact that a person is a lawyer does not make all communications with that person privileged.  See, e.g., United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996).  Instead, the Ninth Circuit has held that the attorney-client privilege has eight essential elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."  Matter of Fischel, 557 F.2d 209, 211 (9th Cir.

12

1    1977); <u>In re Grand Jury Investigation</u>, 974 F.2d 1068, 1071, n.2 (9th Cir. 1992).

2    "The burden is on the party asserting the privilege to establish all the elements of the

3    privilege."  <u>United States v. Martin</u>, 278 F.3d 988, 999-1000 (9th Cir. 2002), <u>as</u>

4    <u>amended on denial of reh'g</u> (Mar. 13, 2002).  "Because it impedes full and free

5    discovery of the truth, the attorney-client privilege is strictly construed."  <u>Id.</u> at 999.

6        **4.**    **Categories 1 & 2.**

7            Defendants Roberts and Stanton contend that the emails in categories 1 and 2

8    are protected from disclosure by the deliberative-process privilege, the official-

9    information privilege, and the attorney-client privilege.  (Dkt. 87 at 3-6.)  As set

10   forth above, the emails in category 1 "expressly relate to [defendants Roberts and

11   Stanton's] consideration of facts in preparing their decision on whether or not to

12   grant a non-party parole."  (<u>Id.</u>)  The emails in category 2 were similarly sent among

13   the hearing officers and BPH legal counsel in 2022 "for the express purpose of

14   assisting BPH and its hearing officers discuss policy and legal determinations for a

15   parole consideration hearing."  (<u>Id.</u> at 3.)  Roberts and Stanton contend that the

16   disclosure of emails in categories 1 and 2 "would harm effective BPH decision-

17   making processes and chill its ability to openly communicate internally, both now

18   and in the future."  (<u>Id.</u>)  The Court will address each of the privileges asserted by

19   Roberts and Stanton below, in turn.

20           With regard to the deliberative-process privilege, the Court concludes that the

21   exemplar emails provided for categories 1 and 2 fall squarely within the privilege.

22   The exemplar email chain for category 1 is a set of emails between Roberts and

23   Stanton starting on August 31, 2017 and ending on September 1, 2017.  In the email

24   chain, Roberts and Stanton are discussing whether to grant Vidal parole.  Roberts

25   provides certain recommendations to Stanton and asks for Stanton's opinion.

26   Stanton responds to the request and provides his views on the matters raised by

27   Roberts.  The exemplar email chain for category 2 is a set of emails with the subject

28   line "Urgent" between Associate Chief Deputy Commissioner Gunning, Deputy

Commissioners Andres and Ruff, Chief Counsel Blonien, and Senior Staff Attorney Young starting on June 30, 2022 and ending on May 30, 2023. The email chain discusses an upcoming parole hearing for Plaintiff. In the email chain, both Blonien and Young provide legal advice about the upcoming parole hearing.

As described above, the exemplar email chains for categories 1 and 2 are predecisional because the communications were clearly "prepared in order to assist an agency decisionmaker in arriving at his decision." Assembly of State of Cal. v. U.S. Dep't of Com., 968 F.2d 916, 921 (9th Cir. 1992) (internal quotation marks omitted), as amended on denial of reh'g (Sept. 17, 1992). The exemplar email chains for categories 1 and 2 are also deliberative because they contain "opinions, recommendations, or advice about agency policies." United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000) (internal quotation marks omitted). Thus, the Court must evaluate whether Plaintiff's need for the emails in categories 1 and 2 overrides the government's interest in non-disclosure. See F.T.C., 742 F.2d at 1161.

As set forth above, to decide whether to override the deliberative-process privilege, courts consider: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Karnoski, 926 F.3d at 1206 (internal quotation marks omitted). With regard to the exemplar emails for category 1, the Court concludes that Plaintiff's need for these emails does not outweigh the government's interest in non-disclosure. The Court primarily bases this decision on the fact that the exemplar emails do not contain any discussion of Vidal's testimony exonerating Plaintiff (or any other evidence of Plaintiff's innocence). Instead, the discussion between Roberts and Stanton is really focused on other aspects of whether to grant Vidal parole and does not appear to have much relevance to the claims or defenses in this case. Thus, the Court concludes that the exemplar emails for category 1 are not sufficiently relevant to justify overriding the deliberative-process privilege. See

14

United States v. Dalton, 2022 WL 17073890, at *5 (C.D. Cal. July 11, 2022)

("[G]eneral assertions of relevance alone are insufficient to breach the deliberative

process privilege.").[4]

      With regard to the exemplar emails for category 2, the Court concludes that

the first factor weighs in favor of disclosure because the emails directly address

Vidal's testimony exonerating Plaintiff and therefore are highly relevant.  The

second and third factors also weigh in favor of disclosure because the "evidence

sought is primarily, if not exclusively, under [the government's] control, and the

government . . . is a party to and the focus of the litigation."  Karnoski, 926 F.3d at

1206.  However, the fourth factor weighs heavily against disclosure because almost

all of the discussion in the email chain consists of giving or seeking legal advice.

Indeed, both Blonien and Young provide legal advice in the email chain about the

upcoming parole hearing.  This legal advice weighs against disclosure under the

deliberative-process privilege and is also protected by the attorney-client privilege.

See Matter of Fischel, 557 F.2d at 211.

      Therefore, the Court concludes that Plaintiff's need for the exemplar emails in

category 2 do not outweigh the government's interest in non-disclosure for any

portion of the emails protected by the attorney-client privilege.  The Court also finds

in the alternative that almost all of the communications in the exemplar email chain

---

[4] As discussed at the hearing on Plaintiff's motion, the parties should meet and confer in an effort to identify the remaining emails that fall within the scope of category 1.  Once that is done, defendants Roberts and Sowders can submit those remaining emails in category 1 to the Court for *in camera* review and the Court will review them to confirm that there is nothing in those emails which would cause the Court to change its ruling as to any specific email.  As set forth above, the Court's balancing of Plaintiff's need for the remails versus the Government's interest in non-disclosure is primarily based on the fact that the exemplar emails did not contain any discussion of Vidal's testimony exonerating Plaintiff (or any other evidence of Plaintiff's innocence).  If there are other emails that fall within the scope of category 1 that contain discussions of such evidence, then the Court is likely to find that Plaintiff's interest in obtaining those emails outweighs the government's interest in non-disclosure.

15

for category 2 are protected by the attorney-client privilege.  The Court notes that there is one significant portion of the email chain that is extremely relevant to this case and does not contain any legal advice.  (See AGO 006410.)  The Court concludes that Plaintiff's need for this one email chain contained on a single page outweighs the government's interest in non-disclosure and should be produced.[5]

With regard to the official-information privilege, the Court concludes that defendants Roberts and Stanton have failed to meet their threshold burden to specifically identify the governmental or privacy interests which would be threatened by disclosure of the material, describe the substantial risk of harm to those interests which would result from disclosure, and estimate the amount of harm which would result from disclosure.  See Price, 165 F.R.D. at 621.  As set forth above, defendants Roberts and Stanton have provided the declaration of Tara Doetsch, Chief Deputy of Program Operations for the Board of Parole Hearings, in support of their claim for the official-information privilege.  (Dkt. 87-2.)  But Doetsch makes only generalized assertions of governmental and privacy interests, as well as generalized assertions of potential harm.  See Kelly, 114 F.R.D. at 672 ("[A] general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure.").

Indeed, Doetsch fails to address any specific communication or how

---

[5] As discussed at the hearing on Plaintiff's motion, the parties should meet and confer in an effort to identify the remaining emails that fall within the scope of category 2.  Once that is done, defendants Roberts and Sowders can submit those remaining emails in category 2 to the Court for in camera review and the Court will review them to confirm that there is nothing in those emails which would cause the Court to change its ruling as to any specific email.  As set forth above, the Court's balancing of Plaintiff's need for the emails versus the Government's interest in non-disclosure is primarily based on the fact that almost all of the communications in the exemplar emails are protected by the attorney-client privilege.  For any emails in category 2 that are not protected by the attorney-client privilege, the Court concludes that Plaintiff's interest in obtaining those emails outweighs the government's interest in non-disclosure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

disclosure of the documents in this case would lead to the generalized harms she identifies.  (Dkt. 87-2); <u>Chism v. Cnty. of San Bernardino</u>, 159 F.R.D. 531, 535 (C.D. Cal. 1994) ("[A] resisting party must specifically describe how disclosure of the requested documents in the particular case in question would be harmful."). Finally, Doetsch also fails "to address how disclosure, under a carefully crafted protective order, would create a substantial risk of harm to significant government interests."  <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 614 (N.D. Cal. 1995).  The Court notes this case has a stipulated protective order, Plaintiff is represented by counsel, Plaintiff is not incarcerated, and Plaintiff was exonerated of the crime for which he was previously incarcerated.  Accordingly, the Court concludes that Doetsch's generalized claims of potential security risks caused by disclosure lack any basis in the record.  Accordingly, the Court overrules the objection of defendants Roberts and Stanton based on the official-information privilege.

### 5.     Category 3.

Defendants Roberts and Stanton contend that the emails in category 3 are protected from disclosure by the deliberative-process privilege, the official-information privilege, and the attorney-client privilege.  (Dkt. 87 at 3-6.)  As set forth above, the exemplar email chain provided for category 3 is a set of emails between Associate Chief Deputy Commissioner Gunning and Deputy Commissioners Andres starting on June 30, 2022 and ending on July 21, 2022.  In the first two pages of the email chain (AGO PRIV 000103-04), Andres and Gunning are discussing a future parole hearing for Plaintiff.  The email chain qualifies as predecisional because Andres and Gunning are discussing preparations for the hearing.  <u>See Assembly of State of Cal.</u>, 968 F.2d at 921.  The email chain also qualifies as deliberative because Andres and Gunning are sharing opinions, recommendation, and advise about how best to move forward with the hearing process.  <u>See Fernandez</u>, 231 F.3d at 1246 (9th Cir. 2000).  Thus, the Court concludes that the first two pages of the email chain (AGO PRIV 000103-04) are

17

protected by the deliberative-process privilege.

The Court must therefore evaluate whether Plaintiff's need for this email chain overrides the government's interest in non-disclosure. See F.T.C., 742 F.2d at 1161. The Court concludes that the first factor weighs in favor of disclosure because the emails directly address Vidal's testimony exonerating Plaintiff and therefore are highly relevant. The second and third factors also weigh in favor of disclosure because the "evidence sought is primarily, if not exclusively, under [the government's] control, and the government . . . is a party to and the focus of the litigation." Karnoski, 926 F.3d at 1206. Finally, the fourth factor is neutral because the protective order in this case can help mitigate any harm to the ability of government employees to have frank and independent discussion regarding contemplated policies and decisions. Accordingly, the Court concludes that Plaintiff's need for this email chain overrides the government's interest in non-disclosure. Accordingly, the Court overrules the assertion of the deliberative-process privilege as to the first two pages of the email chain. (AGO PRIV 000103-04). The Court notes, however, that the email chain includes a brief reference to a discussion with Young to obtain legal advice, a brief comment from Andres to Young, and a brief comment from Andres to Blonien. Defendants Roberts and Stanton can redact these brief references and comments prior to production because they are protected by the attorney-client privilege.

With regard to the last four pages of the email chain (AGO PRIV 000114-15, 000137, and 000140), Andres and Gunning are not discussing preparation for a future parole hearing. Instead, they are discussing an internal personnel matter directly related to the facts of this case. The deliberative-process privilege simply does not apply to internal personnel matters. See, e.g., Swartwood v. Cnty. of San Diego, 2013 WL 6670545, at *3 (S.D. Cal. Dec. 18, 2013). There is no basis to conclude that the internal matter being discussed contributed to the formulation of any important public policy decision. See Soto v. City of Concord,

18

162 F.R.D. 603, 612-13 (N.D. Cal. 1995) ("The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."); see also Thomas v. Cate, 715 F. Supp. 2d 1012, 1044 (E.D. Cal. 2010) ("[T]he deliberative process privilege should be narrowly construed because confidentiality may impede full and fair discovery of the truth.").  Accordingly, the Court concludes that the deliberative-process privilege does not apply to the last four pages of the email chain (AGO PRIV 000114-15, 000137, and 000140).[6]

The Court notes, however, that the last four pages of the email chain do include references to and descriptions of communications to and from attorneys. Therefore, defendants Roberts and Stanton may redact the references to and descriptions of communications to and from attorneys based on the attorney-client privilege.  The Court cautions Roberts and Stanton to carefully apply redaction and only redact the portions of the email chain where a statement is specifically described as being made to or coming from an attorney.

With regard to the official-information privilege, the Court concludes that defendants Roberts and Stanton have failed to meet their threshold burden to support application of the privilege for the same reasons as discussed above with regard to categories 1 and 2.  See Price, 165 F.R.D. at 621.  As set forth above, Doetsch makes only generalized assertions of governmental and privacy interests, as well as generalized assertions of potential harm.  See Kelly, 114 F.R.D. at 672.  Doetsch also fails to address any specific communication or how disclosure of the documents

_____

[6] With regard to other emails within category 3, the Court's view based on the exemplar emails provided is that these emails should be produced, subject only to redaction for attorney-client privilege.  As noted above, some of the exemplar emails are not protected by the deliberative-process privilege at all and for the portion of the exemplar emails that fall within the privilege, the Plaintiff's interest in obtaining these emails outweighs the government's interest in non-disclosure because the emails in category 3 are extremely relevant to the claims at issue in this case.

in this case would lead to the generalized harms she identifies.  (Dkt. 87-2); <u>Chism</u>, 159 F.R.D. at 535.  Finally, Doetsch also fails "to address how disclosure, under a carefully crafted protective order, would create a substantial risk of harm to significant government interests."  <u>Soto</u>, 162 F.R.D. at 614.  Accordingly, the Court overrules the objection of defendants Roberts and Stanton based on the official-information privilege.

### 6.    Category 4.

Defendants Roberts and Stanton do not appear to contend that the emails in category 4 are protected by the deliberative-process privilege.  (Dkt. 87 at 2-4.)  Instead, Defendants Roberts and Stanton appear to only raise the official-information privilege and attorney-client privilege as to category 4.  (<u>Id.</u> at 4-6.)  As set forth above, the exemplar emails provided for category 4 are drafts of a letter from Deputy Commissioner Andres to Associate Chief Deputy Commissioner Gunning that Andres repeatedly emails to himself as he works on the draft.  The email relates to an internal personnel matter based on the facts of this case and clearly does not relate to the formulation of important public policy.  Therefore, the Court easily concludes for the avoidance of doubt that the deliberative-process privilege does not apply to category 4.

With regard to the official-information privilege, the Court concludes that defendants Roberts and Stanton have failed to meet their threshold burden to support application of the privilege for the same reasons as discussed above with regard to categories 1, 2, and 3.  <u>See</u> <u>Price</u>, 165 F.R.D. at 621.  As set forth above, Doetsch makes only generalized assertions of governmental and privacy interests, as well as generalized assertions of potential harm.  <u>See</u> <u>Kelly</u>, 114 F.R.D. at 672.  Doetsch also fails to address any specific communication or how disclosure of the documents in this case would lead to the generalized harms she identifies.  (Dkt. 87-2); <u>Chism</u>, 159 F.R.D. at 535.  Finally, Doetsch also fails "to address how disclosure, under a carefully crafted protective order, would create a substantial risk of harm to

significant government interests." <u>Soto</u>, 162 F.R.D. at 614. Accordingly, the Court overrules the objection of defendants Roberts and Stanton based on the official-information privilege.

The Court notes, however, that the exemplar emails for category 4 do include references to and descriptions of communications to and from attorneys. Therefore, defendants Roberts and Stanton may redact the references to and descriptions of communications to and from attorneys based on the attorney-client privilege. The Court cautions Roberts and Stanton to carefully apply redaction and only redact the portions of the emails where a statement is specifically described as being made to or coming from an attorney.[7]

### 7. Category 5.

Defendants Roberts and Stanton do not appear to contend that the emails in category 5 are protected by the deliberative-process privilege. (Dkt. 87 at 2-4.) Instead, Defendants Roberts and Stanton appear to only raise the official-information privilege and attorney-client privilege as to category 5. (<u>Id.</u> at 4-6.) As set forth above, the exemplar emails provided for category 5 are discussions among BPH staff and legal counsel in February 2023 assessing potential legal liability for the facts underlying this case. Therefore, the Court easily concludes that the emails are protected by the attorney-client privilege. <u>See</u> <u>Matter of Fischel</u>, 557 F.2d at 211. By contrast, the Court also easily concludes for the avoidance of doubt that the deliberative-process privilege does not apply. Indeed, the deliberative-process privilege simply does not apply to internal investigations such as reflected in category 5. <u>See, e.g.</u>, <u>Swartwood</u>, 2013 WL 6670545, at *3.

With regard to the official-information privilege, the Court concludes that

---

[7] With regard to other emails within category 4, the Court's view based on the exemplar emails provided is that these emails are extremely relevant to the claims at issue in this case and should be produced, subject only to redaction for attorney-client privilege.

defendants Roberts and Stanton have failed to meet their threshold burden to support application of the privilege for the same reasons as discussed above with regard to categories 1, 2, 3, and 4.  See Price, 165 F.R.D. at 621.  As set forth above, Doetsch makes only generalized assertions of governmental and privacy interests, as well as generalized assertions of potential harm.  See Kelly, 114 F.R.D. at 672.  Doetsch also fails to address any specific communication or how disclosure of the documents in this case would lead to the generalized harms she identifies.  (Dkt. 87-2); Chism, 159 F.R.D. at 535.  Finally, Doetsch also fails "to address how disclosure, under a carefully crafted protective order, would create a substantial risk of harm to significant government interests."  Soto, 162 F.R.D. at 614.  Accordingly, the Court overrules the objection of defendants Roberts and Stanton based on the official-information privilege.

In sum, the Court concludes that the entirety of the exemplar email chain provided for category 5 constitutes a privileged internal investigation conducted by and at the direction of legal counsel.  Thus, the Court sustains the objection of defendants Roberts and Stanton on the basis of the attorney-client privilege.  However, the Court notes that Plaintiff is entitled to receive a detailed privilege log from defendants Roberts and Stanton justifying every email being withheld as falling within the scope of category 5.  Specifically, the privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5); see also The Sedona Conference Commentary on Privilege Logs, 25 Sedona Conf. J. 221 (2024) (discussing methods to more efficiently establish that a privilege applies).  As set forth above, the Court has overruled the objection based on the official-information privilege as to category 5, and therefore if there are any other emails that fall within this category that are not protected by the attorney-client privilege, they should be produced.

22

## V.

## CONCLUSION

Consistent with the foregoing, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART.  (Dkt. 89.)  Specifically, the Court rules as follows:

**Category 1:**  The Court sustains the objection based on the deliberative-process privilege.  However, this conclusion is primarily based on the fact that the exemplar emails did not contain any discussion of Vidal's testimony exonerating Plaintiff (or any other evidence of Plaintiff's innocence).  If there are other emails that fall within the scope of category 1 that contain discussions of such evidence, then the Court is likely to find that Plaintiff's interest in obtaining those emails outweighs the government's interest in non-disclosure.  The Court also overrules the objection based on the official-information privilege.

**Category 2:**  The Court sustains the objection based on the deliberative-process privilege and the attorney-client privilege.  However, the Court concludes that there is one email chain (AGO 006410) that is not protected by the attorney-client privilege and therefore the Court overrules the deliberative-process privilege as to this one email chain.  The Court also notes that the balancing of Plaintiff's need for the emails in this category versus the Government's interest in non-disclosure is primarily based on the fact that almost all of the communications in the exemplar emails are protected by the attorney-client privilege.  For any emails in category 2 that are not protected by the attorney-client privilege, the Court overrules the deliberative-process privilege.  The Court also overrules the objection based on the official-information privilege.

**Category 3:**  The Court overrules the objection based on the deliberative-process privilege.  However, the exemplar email chain should be redacted for attorney-client privilege.  The Court also overrules the objection based on the official-information privilege.  For any other email that falls within category 3, the

Court concludes that such email should be produced, subject to redaction for attorney-client privilege.

**Category 4:**  The Court overrules the objection based on the deliberative-process privilege.  The Court also overrules the objection based on the official-information privilege.  However, the exemplar email chain should be redacted for attorney-client privilege.  For any other email that falls within category 4, the Court concludes that such email should be produced, subject to redaction for attorney-client privilege.

**Category 5:**  The Court overrules the objection based on the deliberative-process privilege.  The Court also overrules the objection based on the official-information privilege.  However, the Court sustains the objection based on the attorney-client privilege as to all of the exemplar emails provided to the Court for this category.  For any other email withheld as falling within category 5, or any of the other categories, defendants Roberts and Stanton must produce a detailed privilege log to allow Plaintiff to meaningfully review the assertion of privilege.  If there are any other emails that fall within this category that are not protected by the attorney-client privilege, they should be produced, either in full, or with redactions (if needed).

**Defendants Roberts and Stanton shall complete their production of documents and privilege log pursuant to this Order within 10 days.**

\\

\\

\\

\\

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, the Court notes that neither side sought an award of expenses with regard to this discovery dispute.  (Dkts. 87, 89.)  Under Federal Rule of Civil Procedure 37(a)(5)(C), where a motion to compel is granted in part and denied in part, the court has discretion to apportion reasonable expenses for the motion.  The Court exercises its discretion to decline to award expenses for this motion.  The Court's conclusion is based on the fact that the parties have worked together amicably to narrow the scope of the dispute and present the dispute for resolution in an efficient manner through short letter briefs.  This has already saved the parties and the Court time and expense and the Court commends the parties for their professionalism.

IT IS SO ORDERED.

DATED:  March 3, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

25