1  ANDREW BAUM - State Bar No. 190397
   abaum@glaserweil.com
2  JAMES SARGENT - State Bar No. 280968
   jsargent@glaserweil.com
3  GLASER WEIL FINK HOWARD
     JORDAN & SHAPIRO LLP
4  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
5  Telephone: (310) 553-3000
   Facsimile: (310) 556-2920
6
7  Attorneys for Defendants
   *COUNTY OF LOS ANGELES and
   STEVEN SOWDERS*
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SALDANA, | CASE NO.: 2:24-CV-00895-DSF-AJR |
| Plaintiff, | The Honorable Dale S. Fischer |
| v. | Magistrate Judge A. Joel Richlin |
| MARTHA DONOVAN, SUCCESSOR IN INTEREST TO MICHAEL DONOVAN AND LEONARD MAUGHAN; LOS ANGELES COUNTY ASSISTANT DISTRICT ATTORNEY STEVEN SOWDERS; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S BOARD OF PAROLE HEARINGS COMMISSIONERS BRIAN ROBERTS AND KEITH STANTON; LOS ANGELES COUNTY; AND JOHN AND JANE DOES | **DEFENDANTS COUNTY OF LOS ANGELES AND STEVEN SOWDERS' NOTICE OF MOTION AND MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT PURSUANT TO C.C.P. SECTIONS 877 AND 877.6;**<br><br>[Declaration of James Sargent In Support Thereof; Proposed Order filed concurrently therewith] |
| Defendants. | Date: December 15, 2025<br>Time: 1:30 PM<br>Courtroom: 7D<br><br>Trial Date: NONE SET |

**COUNTY DEFENDANTS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**

# NOTICE OF MOTION AND MOTION

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 15, 2025 at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 7D, of the above-entitled Court located at 350 West First Street, Los Angeles, California 90012, Defendants County of Los Angeles and Steven Sowders, (hereafter, "County Defendants") will and hereby do move the Court for an order determining that the settlement entered between Plaintiff Daniel Saldana ("Plaintiff") and the County Defendants was made in good faith within the meaning of California Code of Civil Procedure sections 877 and 877.6, and the seminal California Supreme Court decision *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal.3d 488 (1985) (*Tech-Bilt*).

This motion seeks an order (1) finding the settlement between Plaintiff and the County Defendants to be in good faith, and (2) barring any present or future claims for equitable comparative indemnity, contribution, or partial indemnity by any non-settling defendant against the County or its employees arising from the matters alleged in this action.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of James Sargent, all papers, documents and pleadings on file herein, as well as upon any further oral or documentary evidence as may be presented at the hearing of this matter.

**This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on November 3, 2025. (Declaration of James Sargent, ¶ 7.)**

DATED: November 17, 2025

**GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP**

By: */s/ James Sargent*
    ANDREW BAUM
    JAMES SARGENT
*Attorneys for Defendants*
COUNTY OF LOS ANGELES and STEVEN SOWDERS

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

    A. Plaintiff's 1990 Conviction and 2023 Exoneration ............................. 3

    B. Allegations Against the County Defendants ........................................ 4

    C. The County has Consistently Disputed Liability ................................. 4

    D. Settlement Negotiations and Mediation ............................................... 6

III. ARGUMENT ..................................................................................................... 7

    A. A Settlement Within the Reasonable Range of a Defendant's Liability is Made in Good Faith. ........................................................... 7

    B. The Settlement Between Plaintiff and the County Was Reached in Good Faith ............................................................................................ 8

        1. The Settlement Falls Well Within the "Ballpark" of the County Defendants' Proportionate Liability ............................... 8

        2. The Settlement Appropriately Reflects the County's Defenses and Litigation Risks ..................................................... 9

        3. There is No Allocation of Settlement Proceeds Among Plaintiffs ................................................................................... 10

        4. The County Should Pay Less In Settlement Than if Found Liable After Trial ...................................................................... 10

        5. The County's Financial Condition is Not Relevant to a "Good Faith" Finding ............................................................... 10

        6. The Settlement Agreement is Not the Product of Collusion, Fraud, or Tortious Conduct ...................................................... 11

IV. CONCLUSION ............................................................................................... 11

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 11-6.2 ................. 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Imbler v. Pachtman,*
  424 U.S. 409 (1976) .................................................................................. 2, 5, 10

*Stoll v. County of Kern,*
  U.S.D.C. (E.D. Cal.), Case No. 1:05-cv-001059 (2009) ........................................ 9

*Torres v. County of Los Angeles, et al.,*
  U.S.D.C. (C.D. Cal.), case No. 2:22-cv-07450 (2022) .......................................... 9

**STATE CASES**

*Aero Crete, Inc. v. Sup. Ct.,*
  21 Cal. App. 4th 203 (1993) ............................................................................. 10

*Cahill v. San Diego Gas & Electric Co.,*
  194 Cal. App. 4th 939 (2011) ........................................................................... 11

*City of Grand Terrace v. Sup. Ct.,*
  192 Cal. App. 3d 1251 (1987) ............................................................................. 8

*Erecca's v. Sup. Ct.,*
  19 Cal. App. 4th 1475 (1993) ............................................................................. 8

*Fisher v. Superior Court,*
  103 Cal. App. 3d 434 (1980) ............................................................................... 7

*Horton v. Sup. Ct.,*
  194 Cal. App. 3d 727 (1987) ............................................................................. 10

*L.C. Rudd & Son, Inc. v. Superior Court,*
  52 Cal. App. 4th 742 (1997) ............................................................................. 11

*Neverkovec v. Fredericks,*
  74 Cal. App. 4th 337 (1999) ............................................................................... 7

*North County Contractor's Assn v. Touchstone Ins. Servs.,*
  27 Cal. App. 4th 1085 (1994) ............................................................................. 8

*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.,*
  38 Cal. 3d 488 (1985) ................................................................................ passim

**STATE STATUTES**

Cal. Code Civ. Proc. § 1983 ..................................................................................... 4

Cal. Code Civ. Proc. § 820.4 .................................................................................. 10

Cal. Code Civ. Proc. § 844.6 .................................................................................. 10

| Cal. Code Civ. Proc. § 845.8 | 10 |
|---|---|
| Cal. Code Civ. Proc. § 877 | 3, 7, 12 |
| Cal. Code Civ. Proc. § 877.6 | 3, 7, 8, 12 |
| Cal. Code Civ. Proc. § 877.6(d) | 8 |
| Gov't Code § 815.2(b) | 5 |
| Gov't Code § 815.6 | 5, 10 |
| Gov't Code § 820.2 | 2, 5, 10 |
| Gov't Code § 820.4 | 2, 5 |
| Gov't Code § 844.6 | 2, 5 |
| Gov't Code § 845.4 | 4 |
| Gov't Code § 845.8 | 2, 5 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a wrongful-conviction civil rights case arising from the 1989 prosecution of Plaintiff Daniel Saldana ("Plaintiff"), whose convictions were vacated and whose factual innocence was declared in 2023, after more than three decades of incarceration. Although Plaintiff's ordeal is deeply sympathetic, his allegations make clear that the focal point of this litigation – and the conduct allegedly responsible for his wrongful imprisonment – rests with the Baldwin Park Police Department ("BPPD") defendants, not the County.

The County's alleged involvement begins only decades later, during a 2017 parole hearing at which a co-defendant, for the first time, recanted his prior testimony and stated that Plaintiff was uninvolved in the crime. A Deputy District Attorney from the Los Angeles County District Attorney's Office ("LADA") – Defendant Steven Sowders ("DDA Sowders") – attended that hearing in his official capacity. Acting within the scope of his duties, DDA Sowders promptly documented the new information, circulated it to his superiors, and deferred to LADA's leadership regarding any disclosure obligations. Plaintiff nonetheless alleged that the County Defendants failed to act swiftly enough, thereby extending his incarceration for approximately six years (2017-2023).

Plaintiff and the County Defendants have now reached a comprehensive settlement that fully resolves all claims against the County and Sowders in exchange for a payment of $3,700,000. The settlement followed extensive discovery, dispositive motion practice – including the Court's order granting in part the County's motion to dismiss per F.R.C.P. 12(b)(6) – and a full-day mediation on April 9, 2025, before a widely respected neutral with more than forty years of mediation experience. The settlement was negotiated at arm's length, with both sides represented by experienced counsel, and reflects a fair and reasoned compromise that accounts for the County Defendants' limited role, robust immunity defenses, and the significant

1

cost of continued litigation.

Under the standards articulated in *Tech-Bilt* and its progeny, the settlement easily qualifies as having been made in good faith. The $3.7 million payment is well within the "ballpark" of the County's proportionate exposure given the following undisputed realities:

1. **Minimal County Exposure:** Plaintiff does not allege that the County Defendants caused his wrongful conviction or the bulk of his 30-plus year incarceration. Any arguable liability is confined to a narrow six-year window between 2017-2023. The County Defendants assert that any potential liability for this period is subject to absolute, qualified, and statutory immunities.
2. **Strong Legal Defenses:** The County asserts that DDA Sowders' conduct is shielded by absolute prosecutorial immunity under *Imbler v. Pachtman*, 424 U.S. 409 (1976), as well as qualified immunity and multiple California Government Code provisions (§§ 820.2, 820.4, 845.8, 844.6).
3. **Proportionate Settlement Amount:** When compared with verdicts and settlements in analogous wrongful-conviction cases—many exceeding eight figures—the County's contribution represents a rational and reasonable compromise.
4. **Arm's-Length Mediation:** The settlement was reached through a neutral process free of collusion, fraud, or intent to shift undue liability onto non-settling defendants.
5. **Public Policy Favoring Settlement:** The agreement promotes judicial economy and finality by eliminating complex indemnity issues and avoiding a costly motion for summary judgment that the County Defendants, in their view, were well-positioned to win.

In short, the County's payment reflects its minimal comparative fault, significant legal immunities, and the risks and expenses inherent in continued litigation. The settlement furthers the purposes underlying California Code of Civil

2
**COUNTY DEFENDANTS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**
3139477

Procedure sections 877 and 877.6 by encouraging resolution and ensuring equitable apportionment of liability among defendants.

Accordingly, the Court should determine that the settlement between Plaintiff and the County Defendants was made in good faith and enter an order barring any current or future claims for indemnity or contribution against the County or its employees.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's 1990 Conviction and 2023 Exoneration

This action arises from Plaintiff's wrongful conviction for an October 1989 gang-related shooting in Baldwin Park, California. (Declaration of James Sargent, "Sargent Decl.," Ex. A, ¶¶ 1, 23.) In July 1990, a Los Angeles County jury convicted Plaintiff and two co-defendants of attempted murder and related charges, and Plaintiff was sentenced to 45 years to life. (Sargent Decl., Ex. A, ¶¶ 70, 81, 83.) His conviction was affirmed on appeal. (*Id.*, at ¶ 84.)

Decades later, during a 2017 parole hearing for co-defendant Raul Vidal ("Vidal") overseen by Board of Parole Hearings ("BPH") Commissioners named as defendants in this case (hereafter, "BPH Defendants"), Vidal – for the first time – testified under oath that Plaintiff had no involvement in the shooting. (Sargent Decl., Ex. A, ¶¶ 88, 89.)  That hearing was also attended by DDA Sowders, appearing in his official capacity as a representative of the People of the State of California on behalf of LADA, which prosecuted the underlying case.

Vidal's parole hearing testimony was recorded and recognized by the BPH Defendants as exculpatory. Indeed, the BPH Defendants "guarantee[d]" that the BPH would act on the information provided by Vidal. (Sargent Decl., Ex. A, ¶ 93.) Following Vidal's testimony, BPH Defendant Keith Stanton expressed, on the record, concern that Plaintiff may be wrongfully incarcerated and stated "we'll be doing something with that, I guarantee you." (Sargent Decl., Ex. A, ¶ 95.)

Despite Vidal's testimony, Plaintiff remained incarcerated for approximately

3
**COUNTY DEFENDANTS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**

six additional years. (Sargent Decl., Ex. A, ¶ 97.) In 2023, the LADA's Conviction Integrity Unit ("CIU") reopened the case, confirmed Plaintiff's innocence, and joined in a motion to vacate his conviction. (Sargent Decl., Ex. A, ¶ 33.) On May 11, 2023, Plaintiff's conviction was vacated and he was released from custody. (*Id.*)

### B. Allegations Against the County Defendants

Plaintiff's Complaint names multiple sets of defendants, including the BPPD detectives, BPH Commissioners, and the County of Los Angeles and DDA Sowders. (Sargent Decl., Ex. A.) As Plaintiff's pleading makes clear, the BPPD Defendants are alleged to be the primary cause of his wrongful conviction – accused of fabricating evidence, coercing witness statements, and conducting unduly suggestive identification procedures that led to Plaintiff's 1990 conviction. (Sargent Decl., Ex. A, ¶¶ 2, 47, 57, 105, 107.)

By contrast, Plaintiff's allegations against the County Defendants are temporally and factually distinct. Plaintiff does **not** allege that the County or DDA Sowders played any role in his 1990 wrongful conviction and incarceration. Instead, Plaintiff claims that the County and Sowders failed to act promptly following the 2017 parole hearing, thereby extending his incarceration between 2017 and 2023. (Sargent Decl., Ex. A, ¶¶ 131, 133.)

Specifically, Plaintiff asserts that DDA Sowders violated his constitutional rights by failing "to take sufficient steps to act on" Vidal's parole testimony, and that this omission caused a six-year delay in his release. (*Id.*) In addition to a 42 U.S.C. § 1983 due-process claim, Plaintiff alleges negligence, intentional infliction of emotional distress, and intentional interference with the right to obtain judicial review of confinement under California Government Code § 845.4. (Sargent Decl., Ex. A.) Moreover, Plaintiff claims that the County is vicariously liable for the acts of DDA Sowders. (*Id.*)

### C. The County has Consistently Disputed Liability

From the outset of this litigation, the County Defendants have consistently

disputed liability and Plaintiff's ability to establish the requisite elements of his asserted causes of action. Plaintiff's allegations against the County arise solely from the six-year period between 2017 and 2023—decades after his conviction—based on the theory that a deputy district attorney failed to act quickly enough in relaying exculpatory information disclosed during a co-defendant's parole hearing. The County has maintained that these allegations, even if accepted as true, do not give rise to cognizable liability under either federal or state law.

The County contends that DDA Sowders' conduct was undertaken entirely within the scope of his prosecutorial duties and is protected by absolute prosecutorial immunity under *Imbler v. Pachtman*, 424 U.S. 409 (1976), as well as by qualified immunity and multiple statutory immunities codified in the California Government Code, including sections 820.2, 820.4, 844.6, and 845.8, which independently bar recovery for injuries arising from discretionary acts performed by public employees. Moreover, the County is likewise immune from vicarious liability under Government Code section 815.2(b), which precludes entity liability where the employee is immune.

The factual record further poses challenges to Plaintiff's liability theory. Discovery confirmed that DDA Sowders promptly documented the exculpatory statements made at the 2017 parole hearing, circulated his memorandum to his supervisors within the LADA, and left subsequent action to the discretion of the office's leadership. These facts negate any assertion of reckless disregard or intentional misconduct.

The County's defenses were first set forth in its F.R.C.P. 12(b)(6) motion to dismiss, which the Court granted in part—dismissing Plaintiff's claim for Suppression of Exculpatory Evidence under California Government Code § 815.6. (*See* Dkt. 64.) From that point forward, the County consistently maintained that each of the remaining claims were subject to the same substantive immunities and evidentiary defects, leaving only speculative, limited potential exposure confined to

the six-year period between 2017 and 2023. The overwhelming share of any recoverable damages lies with the BPPD Defendants, who allegedly caused Plaintiff's conviction and decades-long incarceration. In light of these realities, the County's settlement represents a reasoned and proportionate resolution that avoids the burden and expense of continued litigation. Had the case not resolved at mediation, the County was prepared to move for summary judgment—a motion it reasonably anticipated would have been successful.

### D. Settlement Negotiations and Mediation

Following the Court's ruling on the County's F.R.C.P. 12(b)(6) motion and significant discovery, the parties participated in a private mediation on April 9, 2025, before a highly respected mediator with over forty years of experience resolving complex civil-rights and wrongful-conviction matters. (Sargent Decl. ¶ 4.) Both sides were represented by seasoned counsel and engaged in a full day of confidential, arm's-length negotiation.

At mediation, the County faced the choice of continuing to litigate through summary judgment—which it viewed as having a meaningful likelihood of success but at significant cost—or resolving its limited exposure through a reasonable compromise. While the majority of Plaintiff's claims survived the County's motion to dismiss, there still existed risks inherent to litigation on both sides.

After extensive discussions, the parties reached a monetary settlement of $3,700,000, funded entirely by the County. (Sargent Decl. ¶ 6.) The agreement fully resolves all claims against the County and DDA Sowders. (*Id*.) The BPPD Defendants have also recently reached a resolution with Plaintiff. The non-settling BPH Defendants remain in the case.

//
//
//
//

## III. ARGUMENT

### A. A Settlement Within the Reasonable Range of a Defendant's Liability is Made in Good Faith.

California Code of Civil Procedure sections 877 and 877.6 embody the strong public policy favoring settlement by providing that a good-faith settlement bars contribution or indemnity claims by other joint tortfeasors. *Id., see also Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 345 n.4 (1999) ("The courts have striven to apply [Section 877] to accommodate the goal [] of . . . encouragement of settlements . . ."). Further, Sections 877 and 877.6 serve the dual objectives of discouraging protracted litigation, and of insulating a party who settles in good faith from the hazards of further litigation. *See Fisher v. Superior Court*, 103 Cal. App. 3d 434, 442 (1980) ("A defendant who, in good faith, settles plaintiff's case against him is certainly entitled to the benefit of that bargain and is entitled to be free of the expense of the trial and hazards of further litigation."). Section 877.6 authorizes a party alleged to be a joint tortfeasor to seek a judicial determination that a settlement was made in good faith. Once made, such a determination bars "any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Code Civ. Proc. § 877.6(c).

A settlement need not precisely mirror a party's theoretical proportionate fault. A settlement is made in good faith if it is within the "reasonable range" or "ballpark" of the settling defendant's share of liability for the plaintiff's harms, taking into consideration the particular facts and circumstances of the case. *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). In *Tech-Bilt*, the California Supreme Court set forth the following non-exclusive factors to guide the courts' analyses of good faith motions: (1) a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability, (2) the amount paid in settlement, (3)

the allocation of settlement proceeds among plaintiffs, (4) recognition that a settlor should pay less in settlement than it would if it were found liable after a trial, (5) the financial condition and the insurance policy limits of the settlor, and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. *Id*. at 499. Not all of the above factors will apply in every case. *Id*. As discussed further herein, the analytical framework articulated in *Tech-Bilt* squarely necessitates a finding that the Parties' settlement was made in good faith.

On a good faith motion, the settling party need only establish that a settlement has been reached. *City of Grand Terrace v. Sup. Ct.*, 192 Cal. App. 3d 1251, 1261-62 (1987). Any party who opposes the motion bears the heavy burden of proving that the settlement is not in good faith. *See* Code Civ. Proc. § 877.6(d); *see also Erecca's v. Sup. Ct.*, 19 Cal. App. 4th 1475 (1993); *North County Contractor's Assn v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1091 (1994). Thus, only where a party asserting the lack of good faith is able to demonstrate that "the settlement is so far out of the ballpark . . . as to be inconsistent with the equitable objectives of the statute," will it be found that the settlement lacks good faith. *Tech-Bilt*, 38 Cal. 3d at 499-500.

### B. The Settlement Between Plaintiff and the County Was Reached in Good Faith.

#### 1. The Settlement Falls Well Within the "Ballpark" of the County Defendants' Proportionate Liability

In determining whether the Settlement was made in good faith for purposes of Section 877.6, a key factor the Court should consider is whether the settlement bears a reasonable relationship to the settlors' proportionate share of liability. *Tech-Bilt*, 38 Cal. 3d at 499-500. Here, the County's $3.7 million settlement is eminently reasonable in light of its minimal potential exposure. Plaintiff's claims against the County Defendants are limited to a narrow six-year period (2017–2023) following a co-defendant's parole hearing and do not allege any County misconduct in the 1989 investigation or 1990 prosecution that resulted in his conviction. The gravamen of

Plaintiff's wrongful-conviction allegations is directed squarely at the BPPD Defendants, whom Plaintiff accuses of fabricating evidence and coercing witness statements—conduct that allegedly caused his entire thirty-three-year incarceration.

Against that backdrop, the County's potential liability is speculative at best and legally constrained by absolute, qualified, and statutory immunities. The settlement amount—funded entirely by the County—therefore represents a fair and proportionate compromise that aligns with the "reasonable range" envisioned by *Tech-Bilt*.

Comparative data further supports the reasonableness of the County's payment. Recent wrongful-conviction settlements and verdicts involving similar substantial periods of incarceration and far stronger evidence of official misconduct have resulted in recoveries between $5 million and $14 million, or approximately $275,000 to $700,000 per year of confinement. In one case, after more than 20 years of incarceration, an exoneree brought suit against a municipality on the basis of coerced testimony, and the case settled for $5,500,000. *Stoll v. County of Kern*, U.S.D.C. (E.D. Cal.), Case No. 1:05-cv-001059 (2009). In another, a plaintiff alleged fabrication of evidence after his murder conviction was overturned following 20 years of incarceration. That case settled for $14,000,000. *Torres v. County of Los Angeles, et al.*, U.S.D.C. (C.D. Cal.), case No. 2:22-cv-07450 (2022). Here, Plaintiff's six-year period of alleged County-related harm yields an effective per-year equivalent well within that range. This confirms that the $3.7 million settlement—roughly $616,000 per year—comfortably falls within the "ballpark" of reasonableness under *Tech-Bilt*.

### 2. The Settlement Appropriately Reflects the County's Defenses and Litigation Risks

The County has denied liability at every stage and advanced compelling defenses that, if adjudicated, posed the specter of a complete bar to Plaintiff's recovery against the County. As detailed in the Court's order granting the County's motion to dismiss in part, Plaintiff's cause of action for suppression of exculpatory

evidence under California Government Code § 815.6 has already been dismissed. (*See* Dkt. 64.) The remaining claims are subject to the same substantive immunities—absolute prosecutorial immunity under *Imbler v. Pachtman*, 424 U.S. 409 (1976); qualified immunity; and statutory immunities under Government Code §§ 820.2, 820.4, 844.6, and 845.8.

### 3. There is No Allocation of Settlement Proceeds Among Plaintiffs

This factor is not relevant because there is only one Plaintiff in this case.

### 4. The County Should Pay Less In Settlement Than if Found Liable After Trial

*Tech-Bilt* promotes settlement, even if the settlement is less than a plaintiff's possible trial recovery, based upon the transactional costs avoided by reaching an early agreement. *Horton v. Sup. Ct.,* 194 Cal. App. 3d 727, 736 (1987) (plaintiffs' probable recovery is discounted "based on the savings in trial time, defense costs, attorneys' fees and the avoidance of the risk inherent in every trial . . ."). This serves to encourage early settlement and curtail extensive and costly litigation. *Id*. As such, even assuming the Parties' settlement was less than the worst case liability scenario the County Defendants could have faced following a trial (although the County maintains that liability was highly doubtful), the settlement was still reasonable in light of the avoided costs of continued litigation coupled with the uncertainty of trial.

### 5. The County's Financial Condition is Not Relevant to a "Good Faith" Finding

Another *Tech-Bilt* factor considers, in circumstances not applicable here, the settlor's financial condition or insurance policy limits. *Tech-Bilt*, 38 Cal. 3d at 499; *see also Aero Crete, Inc. v. Sup. Ct.*, 21 Cal. App. 4th 203, 208-09 (1993) (holding that whatever amounts are given by an insolvent defendant are likely a "good faith" settlement, regardless of that defendant's share of fault). A settlor's relative insolvency is considered to show the reasonableness of a disproportionately low

settlement amount. *L.C. Rudd & Son, Inc. v. Superior Court*, 52 Cal. App. 4th 742, 749-50 (1997) (non-settling parties' request for discovery as to settlors' financial condition appropriately denied where the settlement was not "disproportionately low"). Here, the Parties' settlement is not disproportionately low, so County's financial condition is not relevant. *See e.g., Cahill v. San Diego Gas & Electric Co.*, 194 Cal. App. 4th 939, 968 (2011) (affirming good faith settlement despite fact that settlor did not present evidence of its financial condition or liability insurance policy limits and noting that those factors were deemed "irrelevant to the court's determination").

### 6. The Settlement Agreement is Not the Product of Collusion, Fraud, or Tortious Conduct

Under the final *Tech-Bilt* factor, the Court should consider whether the Parties' settlement was entered into in good faith without collusion, or whether there is evidence of an intent to defraud or tortiously injure any non-settling defendants. *Tech-Bilt*, 38 Cal. 3d at 499. As set forth herein and in the attached Declaration of James Sargent, the Parties' settlement is a product of arms-length negotiations among experienced counsel in an adversarial setting before a well-respected neutral. (Sargent Decl., ¶¶ 4-6). The settlement came amid the County's preparation to file a summary judgment motion, which would have raised a substantial possibility that the County Defendants would be dismissed from this action without any liability. Moreover, as set forth in the Sargent Declaration, the settlement was reached without any direct communications between the Parties, and so there was no possibility of any collusion or intent to injure any non-settling parties. (*Id.*, at ¶¶ 5-6.)

## IV. CONCLUSION

Although vigorously disputing liability in this case, the County Defendants have settled with Plaintiff to avoid the disruptions and substantial attorneys' fees and risks that a trial would have entailed, as well as the uncertainties of litigation. Measured against the factors articulated in *Tech-Bilt, Inc. v. Woodward-Clyde &*

*Associates*, 38 Cal. 3d 488 (1985), the $3.7 million settlement plainly falls within the "ballpark" of reasonableness. It was reached in good faith, without collusion or intent to prejudice the non-settling defendants, and serves the public policy of promoting settlement and judicial efficiency. For these reasons, the Parties respectfully jointly request that the Court issue an order determining that the settlement between Plaintiff and the County Defendants was made in good faith within the meaning of California Code of Civil Procedure sections 877 and 877.6.

DATED: November 17, 2025

**GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP**

By: */s/ James Sargent*
ANDREW BAUM
JAMES SARGENT
*Attorneys for Defendants*
COUNTY OF LOS ANGELES and STEVEN SOWDERS

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendants County of Los Angeles and Steven Sowders, certifies that this brief contains 3,423 words and 12 pages, which complies with the word limit in Local Rule 11-6.1 and the page limit in this Court's Standing Order.

DATED: November 17, 2025

**GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP**

By: */s/ James Sargent*
    ANDREW BAUM
    JAMES SARGENT
    *Attorneys for Defendants*
    COUNTY OF LOS ANGELES and STEVEN SOWDERS