UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SALDANA,<br>     Plaintiff,<br><br>v.<br><br>MICHAEL DONOVAN et al.,<br>     Defendants. | No. 2:24-cv-00895-DSF-AJR<br><br>Order GRANTING Defendants County of Los Angeles and Steven Sowders' Motion for Determination of Good Faith Settlement (Dkt. 119) |

     Defendants County of Los Angeles and Steven Sowders (County Defendants) move for an order finding that their proposed settlement with Plaintiff Daniel Saldana was made in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6. Dkt. 119 (Mot.). The motion is unopposed. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for December 15, 2025, is removed from the Court's calendar. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

     This action arises from Saldana's wrongful conviction for attempted murder and other charges related to an October 1989 gang shooting. Dkt. 1 (Compl.) ¶¶ 23-28, 81. During a 2017 parole hearing, Saldana's co-defendant testified under oath that Saldana was not involved in the shooting. Id. ¶¶ 88-90. Sowders attended the hearing in his capacity as a Deputy District Attorney in the Los Angeles County District Attorney's Office (LADA). Id. ¶ 88; Mot. at 1. Despite this exculpatory testimony, Saldana remained in prison for six years.

Compl. ¶ 97.  In 2023, LADA's Conviction Integrity Unit reopened the case and confirmed Saldana's innocence.  Id. ¶¶ 8-9.  On May 11, 2023, Saldana's conviction was vacated, and he was released from prison.  Id.

Saldana brought the instant lawsuit, asserting claims against Sowders for: (1) deprivation of liberty without due process of law under 42 U.S.C. § 1983, id. ¶¶ 130-36; (2) intentional infliction of emotional distress (IIED), id. ¶¶ 137-40; and (3) negligence, id. ¶¶ 146-49.  Additionally, Saldana asserted a claim against both Sowders and the County for intentional interference with his right to obtain judicial review of the legality of his confinement under California Government Code § 845.4.  Id. ¶¶ 141-45.  Finally, Saldana asserted claims against the County for vicarious liability.  Id. ¶¶155-59.[1]

Saldana and the County Defendants agreed to a settlement under which the County Defendants would pay Saldana $3,700,000 in exchange for a full release of all claims against the County Defendants.  Mot. at 6.  The County Defendants now move for an order determining that the settlement was made in good faith pursuant to California Code of Civil Procedure sections 877 and 877.6.  Id. at 3.  Saldana consents and agrees the settlement was made in good faith.  Dkt. 123.  Notices of non-opposition were filed by the remaining defendants, Baldwin Park Police Department Officers, dkt. 121, and Board of Parole Hearings Commissioners, dkt. 126.

## II. LEGAL STANDARD

Under California law, "[w]here a release . . . is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort," such release "reduce[s] the claims against the others" without "discharg[ing] any other such party from liability."  Cal. Code Civ. P. § 877(a).  The Court's determination of

---

[1] This Court previously dismissed Saldana's claim against the County for suppression of exculpatory evidence in violation of California Government Code § 815.6.  Dkt. 64.

2

good faith is governed by California Code of Civil Procedure section 877.6(c), which provides:

> A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

In evaluating a settlement, the Court may consider the following factors to determine whether the settlement is "within the reasonable range of the settling tortfeasor's proportional share of comparative liability": (1) "a rough approximation of [the plaintiff's] total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) "existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488, 499 (1985). The list of factors is not exhaustive and may not apply in all cases. PacifiCare of California v. Bright Med. Assocs., Inc., 198 Cal. App. 4th 1451, 1464 (2011). The Court's evaluation must "be made on the basis of information available at the time of settlement." Tech-Bilt, 38 Cal. 3d at 499. The party challenging good faith has the burden of proof and must show "the settlement is so far out of the ballpark in relation to [the Tech-Bilt] factors as to be inconsistent with the equitable objectives of [Cal. Code Civ. P. 877.6]." Id. (internal quotation marks omitted).

### III. ANALYSIS

Because no party to the action has filed an opposition, the Court does not need to evaluate the settlement under the Tech-Bilt factors. City of Grand Terrace v. Superior Ct., 192 Cal. App. 3d 1251, 1261 (1987) (concluding that "only when the good faith nature of a settlement is disputed" must the trial court consider the Tech-Bilt

factors); see Cal. Civ. Proc. Code § 877.6(d) (indicating a presumption of good faith). Nevertheless, the Court is satisfied that the Tech-Bilt factors weigh in favor of granting the motion. Several of the Tech-Bilt factors do not apply here, and there is no evidence of collusion, fraud, or tortious conduct and no reason to question the allocation of the funds.

The salient Tech-Bilt factors include proportionate liability, the amount paid, and the settlement amount relative to possible liability at trial. First, the settlement is proportionate to the County Defendants' share of liability. The County Defendants supplied the Court with data regarding recent settlements and verdicts in similar wrongful conviction cases. Mot. at 9.[2] By comparison, the instant settlement falls within the ballpark of the reasonable range of recovery considering the time Saldana remained in prison after the County Defendants allegedly became aware of exculpatory evidence.[3] Additionally, notices of non-opposition filed by the other defendants support a finding that the County Defendants' share of liability is reasonable. Second, the settlement is for a significant sum of money, and the County Defendants assert the amount appropriately reflects their assessed litigation risks. See id. at 9-10. Finally, the settlement amount is reasonable relative to the potential cost of continued litigation and the County Defendants' possible liability at trial. The Court therefore concludes that the settlement was made in good faith.

---

[2] The County Defendants cited total recoveries between $5 million and $14 million in similar wrongful conviction cases, translating to $275,000 to $700,000 per year of confinement. Mot. at 6.

[3] Here, the County Defendants were allegedly responsible for six years of confinement after Sowders became aware of the exculpatory evidence. Id. The $3.7 million settlement translates to roughly $616,000 per year of confinement. Mot. at 6. The County Defendants argue responsibility for Saldana's wrongful conviction and imprisonment before 2017 rests primarily with other defendants in this action. Id. at 1.

## IV. CONCLUSION

For the foregoing reasons, the County Defendants' motion for determination of good faith settlement is GRANTED.

IT IS SO ORDERED.

Date: December 4, 2025

Dale S. Fischer
United States District Judge

5